In re MAX SUNG HI LIM and Lily Sook Myeng Lim, Debtors.

Bankruptcy Nos. 76–0474, 76–0475.

United States Bankruptcy Court, D. Hawaii.

July 16, 1981.

Edward C. Kemper, Honolulu, Hawaii, for Max Sung Hi Lim and Lily Sook Myeng Lim.

Bert S. Tokairin, Honolulu, Hawaii, pro se.

Elliot S. Enoki, Honolulu, Hawaii, for Internal Revenue Service.

Richard T. Kaneko, Honolulu, Hawaii, for Trustee, Ralph S. Aoki.

Harold M. Fong, Honolulu, Hawaii, for Finance Factors, Ltd.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JON J. CHINEN, Bankruptcy Judge.

Two properties owned by Debtors and subject to liens in favor of Finance Factors and the Internal Revenue Service were sold under the jurisdiction of this Court free and clear of all encumbrances, with the liens attaching to the proceeds of the sale. The issue before this Court is whether or not Finance Factors, as the holder of a valid lien on both properties, is entitled to the proceeds of the sale, after the costs of the sale are deducted, or whether or not the general administrative expenses of the Chapter XII proceedings must be paid prior to payment to Finance Factors.

A hearing was held on March 13, 1981 at which time Max Sung Hi Lim and Lily Sook Myeng Lim, hereafter "Debtors", were represented by Edward C. Kemper; Ralph S. Aoki, hereafter "Trustee", was represented by Richard T. Kaneko; Finance Factors, Limited, hereafter "Finance Factors" was represented by Harold M. Fong; the Internal Revenue Service, hereafter "IRS" was represented by Elliot S. Enoki; and Bert S. Tokairin represented himself.

## FINDINGS OF FACT

1. Finance Factors was the mortgagee of the properties owned by Debtors situated at 58–261E Kamehameha property (Kamehameha property) and Lot 9, "Pupukea Beach Subdivision" (Pupukea property). The levy by the IRS was made subsequent to the mortgagees in favor of Finance Factors.

2. By orders of this Court filed herein on September 12, 1977 and March 8, 1979, the Pupukea and Kamehameha properties, respectively, were sold free and clear of all liens, with the liens attaching to the proceeds of the sale.

3. The proceeds of the sale are now held by the Trustee. Claims for payment from the proceeds have been made by Finance

Factors, the mortgagee; the IRS for taxes; and the Trustee and his attorney for administrative expenses.

## CONCLUSIONS OF LAW

1. The issue before this court is whether or not the general administrative expenses other than those relating to the actual sale of the properties may be charged against the proceeds of the sale prior to payment to the lienholders.

2. The general rule regarding the handling of liens in a bankruptcy proceeding is stated by Colliers as follows:

When the time for distribution arrives, therefore, the trustee may find that much of the bankrupt's property is encumbered by still-valid liens. These liens, with certain exceptions, some of which are now created by the Act itself, must be satisfied in full before any payment of dividends to unsecured creditors or on administrative expenses can be made; only after the discharge of such valid liens and incumbrances are assets available for distribution to priority claimants. 3A *Collier's on Bankruptcy* ¶ 64.02[2] 14th ed. (1975).

3. The Ninth Circuit has adopted the rule that the liens must be satisfied in full before any payment on administrative expenses can be made. *See In Re Williams' Estate*, 156 Fed. 934 (9th Cir.1907).

4. The above view was reaffirmed in *In Re Hull*, 311 F.Supp. 197 (1970). In that case after the sale of the bankrupt's property, the Trustee used the sale proceeds to pay administrative expenses, contending that, since the lien holders were voluntarily in the bankruptcy court, they had waived their claim for priority over the proceeds.

5. In rejecting the argument of the Trustee, the Court stated:

It cannot be seriously contended that in the instant case, the petitioners came voluntarily into the bankruptcy court to enforce their liens. They were specifically enjoined by the court when they tried to foreclose their liens. Once the referee had assumed jurisdiction over the proper-

ty, their later appearances and conduct in the bankruptcy court in protecting their interest cannot be construed as express or implied consent to actions of the bankruptcy court. *Id.* at 202–203.

After quoting from *In Re Williams'*, the Court made the following statement:

Thus, in the Ninth Circuit, non-consenting lien holders can be charged only with expenses directly connected with the sale—those expenses inherit in the selling procedure which were incurred by the bankruptcy court only because it had jurisdiction over the property and which would have been incurred by someone else had the sale taken place independent of the bankruptcy court. *Id.* at 203.

6. In the instant case, after payment of the costs actually incurred in the sale of the Kamehameha and Pupukea properties, all the proceeds will be paid to Finance Factors as are due under the mortgages on said properties. After Finance Factors is satisfied, then the proceeds remaining may be used to satisfy the lien of the IRS and the administrative expenses.

An order will be signed upon presentation.